McCall et al. *versus* Webb et al., Overseers, &c., in right of Elizabeth McCandless.

B. a settler, sold a tract of land to M. by a deed which contained the following clause, " provided that I, the said B., am entitled to hold the said tract of land by my settlement." The title of B. by settlement proved worthless by reason of a precedent warrant and survey. Two of the heirs of M., the grantee, entered the premises under a grant from another person, and by themselves their heirs and vendees, for thirty-seven years, had exclusive and undisputed possession, clearing, fencing and farming the land, paying the taxes and receiving the rents, issues and profits. *Held*, that even if there was an implied or resulting trust in favor of their co-heirs, the Statute of Limitations applied.

November 19th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, of *Butler county:* Of October and November Term 1876, No. 125.

Ejectment by John Webb and John R. McJunkin, overseers of the poor of Clay township, in right of Elizabeth McCandless, a pauper of said district, against Samuel R. McCall, Charles Cranmer and Mary Ann his wife, William Miller and Melissa his wife, John Brown, John Brown, Jr., Christopher Bortmas, Dr. Josiah McCandless and George Timblin, for the undivided sixth part of five hundred and sixty acres of land in Clay Township, Butler

[McCall *v.* Webb.]

county, Pa., said land consisting of three tracts, one of four hundred acres and allowance, settled by John McCandless, Sr.; one adjoining, of twenty acres of the Timblin tract, and one of seventy acres, purchased by said John McCandless, Sr., from John Brackney.

The plaintiff, Elizabeth McCandless, was a daughter of John McCandless, Sr., deceased, who died in 1810, leaving a widow, Mary Ann, and six children, viz.: Mary Turner, Jane Thompson, Nancy Patterson, George W. McCandless, Elizabeth McCandless and John S. McCandless, to whom by his will his lands were devised share and share alike.

The defendants are the heirs and vendees of John S. and George W. McCandless, deceased.

The deed from John Brackney to John McCandless, Sr., for the seventy acres, bearing date April 7th, 1804, contained the following clause; "provided, that I, the said John Brackney, am entitled to hold said tract of land by my settlement." Brackney was a settler of a larger tract, embracing seventy acres on the south side of Muddy Creek (the piece in dispute), for John Woods, the legal owner, and expected to get from Woods one hundred acres of the tract as his compensation for settling it, and with such anticipations the deed was executed with said provision.

Subsequently, however, a settlement was made between S. A. Gilmore, agent of John Woods, and said Brackney, in pursuance of which the latter received a deed for one hundred acres on the north end of the tract in full of his claim as settler of the said tract, and said one hundred acres embraced no part of the seventy acres by him with said provision conveyed to said John McCandless, Sr.

Thirty-seven years before suit brought, John S. and George W. McCandless were in possession of said land, claiming to hold it as their own, under articles of agreement with Samuel A. Gilmore, surveying and dividing it between them in 1835, and in 1839 taking a deed for it pursuant to the articles of agreement, and placing the same on record, and continuing to the date of the action, by themselves, their heirs and vendees, the defendants, in exclusive possession, use and enjoyment; clearing, fencing, and farming the land, paying the taxes, and receiving the rents, issues and profits.

The defendants gave in evidence the records of proceedings in partition of the real estate of the said John McCandless, Sr., in which said Brackney tract was not claimed as part of the estate, and which showed the division of the homestead and Timblin tracts and the receipt of G. W. McCandless, committee of Elizabeth McCandless, for her full distributive share of the lands claimed and partitioned, and made several offers to prove that Brackney had no title, and that it had been abandoned by the widow and heirs of the decedent. The court, McDermitt, P. J., overruled the offers and

.instructed the jury that as to the homestead and Timblin tracts, their verdict *must* be for the defendants; as to the Brackney tract, the decedent was in possession of it at the time of his death, when it passed by his will to his children as tenants in common; and that the purchase of the legal title by John S. and George W. McCandless on January 5th 1839, from Samuel A. Gilmore, enured to the benefit of all their co-heirs; that in the absence of clear and distinct testimony that the trustees notified their *cestuis que trust* that the possession was adverse, the trustees' possession of the trust property was prima facie the possession of the *cestuis que trust,* and under the law and the evidence the Statute of Limitations could not have commenced running against plaintiff prior to the Act of 22d April 1856, and twenty-one years of adverse possession could not have been completed before suit brought in 1872, and peremptorily instructed them that their verdict *must* be in favor of the plaintiff.

Verdict accordingly, and the rulings and those parts of the charge to the effect that the plaintiff had sufficient title to recover on, and the peremptory direction of a verdict for plaintiff, assigned for error.

*Thompson & Scott* and *McCandless & Greer,* for plaintiffs in error.

*Lewis Z. Mitchell,* for defendants in error.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1879.

If we are to give credence to the uncontradicted testimony in this case, some thirty-seven years before the bringing of this suit, John S. and George W. McCandless, under whom the defendants below claim, are found in possession of the land in controversy, claiming it as their own; claiming to hold it under articles of agreement with Samuel A. Gilmore, and not in right of any title of their father, John McCandless. In the summer of 1835, they had a survey made of this land, which was known as the Brackney tract, and had it divided between themselves, each one taking his several purpart. In 1839, Gilmore executed to them a deed for these premises, which was duly recorded the same year. That from the time of their entry, they had the exclusive possession of, and cleared, fenced and farmed the land, paid the taxes assessed upon it, received the rents, issues and profits accruing therefrom, up to the time of their several deaths, and that they transmitted their possession and title, unchallenged, to their heirs and vendees, is not disputed. From the beginning we hear nothing of any interference, in word or act, on part of the heirs of John McCandless or any one else, with the title and possession of John S. & George W. McCandless, but they, their heirs and assigns, have now for over forty years, with title unquestioned, except by the present suit, quietly and peaceably possessed and

[McCall *v.* Webb.]

enjoyed the land in dispute. Moreover, in 1851, partition was made of the real estate of John McCandless, in which all his heirs were represented, but in that process the Brackney tract was not included, nor do we, at that time, hear of its being claimed as part of that estate. This is the more significant, from the fact that John S. and George W. McCandless were then in the possession of the Brackney tract, and so had been for many years previously. The attention of those interested in the estate being thus, by the process in partition, called to the value and extent of it, we would naturally suppose that, had there been any pretence of title to the land in controversy, attention would have been called to it, and the more so, that two of the heirs were claiming it by title adverse to that of the estate.

Admitting, then, that John McCandless had, in his lifetime, title to this land, and that when John S. & George W. entered upon it, in 1835, they were but joint-tenants, as to the title, with their co-heirs, there was, nevertheless, sufficient evidence of an adverse and exclusive holding and possession, by these two, to have carried the case to the jury. For it is said, in Frederick *v.* Grey, 10 S. & R. 182, the leading case on this branch of the law, that where one tenant in common enters upon the whole tract of land, covered by the joint title, and takes the profits and claims the whole exclusively for twenty-one years, the jury ought to presume an actual ouster though none be proved.

But John McCandless had no title to this Brackney tract of land. Brackney conveyed to him subject to the provision that he, Brackney, should be entitled to hold the tract by virtue of his settlement right. It follows, that if Brackney's title by settlement failed the title of McCandless fell with it. Now, the defendants offered to prove that Brackney's title had proved to be invalid and that it had been abandoned, but this offer was erroneously overruled by the court, and we must, therefore, for the present, treat the offer as proved. That is, we must treat Brackney's settlement as worthless, because of the precedent warrant and survey, and as a consequence the dependent title of McCandless was also worthless. This left him nothing in the land, saving a few years possession, which gave him no standing whatever as against the owner of the title.

How then was a title vested in Elizabeth McCandless which was never in her father under whom she claims? The learned judge of the court below answers; John S. and George W. McCandless, by entering upon the land, assuming a possession which belonged as well to their co-heirs as to themselves, and buying in the outstanding title, became trustees for those co-heirs. Suppose this to be so, it is but an implied or resulting trust, and there is no doubt about the applicability of the Statute of Limitations to such a trust : Walker *v.* Walker, 16 S. & R. 379. As was said by Mr. Justice Huston, who delivered the opinion in that case, "the doctrine that the Statute of Limitations does not apply in cases of trust has been much

[McCall *v.* Webb.]

misunderstood. * * * * It never applied to implied trusts; to all these cases, where he who has the legal title denies and disclaims all trusts, claims and acts in all cases and in all respects as sole and exclusive owner; much less does it apply to cases where, along with such occupation and claim, the party has the legal title of record; and the trust is to be made out by old hearsays, vague recollections and forgotten or abandoned claims." This language of the learned justice may be well applied to the case in hand, except that this trust is sought to be established by no "old hearsays" or "vague recollections" of what John S. or George W. McCandless said or did, but only by a long abandoned claim, originating in a former possession by an ancestor who died nearly seventy years ago.

That Elizabeth was a lunatic, at the time of the entry of her brothers and since, can have no effect in this case, as that fact would but have the effect, under the first section of the Act of the 22d of April 1856, to extend her right of entry or action from twenty-one years, as in the case of persons *sui juris*, to thirty years: Hunt *v.* Wall, 25 P. F. Smith 413. Moreover, the sixth section of the Act above recited, effectually disposes of any claim she might, at one time, have had as the beneficiary of an implied trust. That section prescribes five years as the limitation within which suits may be brought to enforce such trusts, allowing two years after the passage of the act, within which, persons who would be sooner barred thereby might bring suit. But in this act no saving clause is found, like that in the Act of 1785, in favor of married women, minors and persons of unsound mind.

Making this case, then, to hinge, as the court below did, on the question of an implied trust, and the plaintiffs have shown no title whatever in Elizabeth McCandless and, so, were not entitled to the verdict which the court directed in their favor.

The judgment is reversed.